UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>INTERRA INNOVATION, INC.,<br><br>Debtor | Chapter 11<br>Case No. 19-13469-FJB |

MEMORANDUM OF DECISION ON
MOTION OF COASTAL CEMENT CORPORATION FOR LEAVE TO FILE REQUEST FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. §§ 503(B)(9) AND 507(A)(2), FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(B), AND MLBR 3002-1

By the present motion (the "Motion"), Coastal Cement Corporation ("Coastal") requests allowance under 11 U.S.C. § 503(b)(9) and 503(a) of an administrative expense in the amount of $94,695 for goods delivered within 20 days before the petition date; and it further requests an extension for excusable neglect of the deadline for filing a request for payment of an administrative expense under § 503(b)(9), such that this late-filed request not be disallowed as untimely.  The Official Unsecured Creditors Committee (the "Committee") and the chapter 11 debtor-in-possession, Interra Innovation, Inc. (the "Debtor"), oppose the motion, arguing that Coastal has not shown that its neglect was excusable, and that therefore the request for allowance of administrative expense must be denied as late. This is a dispute about priority only; the objecting parties argue that the claim should not enjoy the status and priority of an administrative expense but do not object to allowance of Coastal's claim as a nonpriority unsecured claim. For the reasons set forth below, the Court denies the request to extend the filing deadline and accordingly also denies the request for payment of administrative expense as untimely.

**FACTS**

The relevant facts are uncontested.  In the ordinary course of business, Coastal delivered goods having a value of $94,695 to the Debtor during the 20-day period immediately before the Debtor filed the petition commencing this bankruptcy case. By local rule in this district, MLRB 3002-1, the deadline for filing a request for payment of an administrative expense arising under § 503(b)(9) is the sixtieth day after the first date set for the § 341 meeting of creditors, which deadline in this case fell on January 17, 2020. Coastal's request for allowance of these expenses was filed first as part of a proof of claim it filed on January 31, 2020, and again later in the form of the present Motion, filed on March 16, 2020.  Only the latter was a request for payment of administrative expense, and only the latter included a motion under Rule 9006(b)(1) to extend the deadline for filing a § 503(b)(9) request. But both the proof of claim and the present motion were filed after the deadline.

On or about October 15, 2019, the Court sent Official Form 309F ("the Notice") regarding the Debtor's bankruptcy case to Coastal, and Coastal concedes that its in-house counsel received it.  Among other things, the Notice announced the date of the meeting of creditors and stated, in bold, that the deadline for filing § 503(b)(9) requests was 60 days from the first date set for the meeting. The Notice further indicated that § 503(b)(9) covers "goods sold within twenty (20) days of bankruptcy."  Coastal's in-house counsel asserts that she was not familiar with bankruptcy procedures and with this Court's local rule MLRB 3002-1, and she contends that, prior to January 29, 2020, she was unfamiliar with the priority given certain claims by § 503(b)(9) of the Bankruptcy Code. She did not retain experienced outside counsel until the deadline had passed. Only then did Coastal appreciate that the time for filing a request for an administrative expense under § 503(b)(9) had expired.

**APPLICABLE LAW**

The applicable law is from three sources.  First is the local rule that established the filing deadline:

> Unless the Court orders otherwise, any request for allowance of an administrative expense for the value of goods delivered to a debtor in the ordinary course of the debtor's business within twenty (20) days prior to the commencement of a case pursuant to 11 U.S.C. § 503(b)(9) shall be filed with the Court, in writing, within sixty (60) days after the first date set for the meeting of creditors pursuant to 11 U.S.C. § 341. *Failure to file such a request for allowance within the time period specified in this Rule will result in denial of administrative expense treatment for such claim*."

MLBR 3002-1 (emphasis added). The second sentence makes clear that the filing deadline is a bar date. The prefatory language in the first sentence—"unless the court orders otherwise"—indicates that the time may be modified.

Second is Fed. R. Bankr. P. 9006(b)(1), which states that subject to exceptions not applicable here:

> when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. R. Bankr. P. 9006(b)(1). The time limit in MLBR 3002-1 is promulgated by a local rule, which is in essence a standing order of the Bankruptcy Court for this district. As an order of the court requiring that an act be done within a specified period, MLRB 3002-1 is subject to Rule 9006(b)(1). Because the present motion was made after expiration of the specified period, it is governed by part (2) of this subsection. Accordingly, "the court may for cause shown at any time in its discretion . . . permit the act to be done where the failure to act was the result of excusable neglect." Fed. R. Bankr. P. 9006(b)(1). Rule 9006(b)(1) thus requires the movant to show (i) that there exists cause to permit the act to be done after expiration of the time and (ii) that the failure to act timely was the result of excusable neglect. The language is permissive ("the court may") and makes the decision discretionary ("in its discretion").

3

The third authority is the Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Assoc. L.P.*, 113 S.Ct. 1489, 1497 (1993), for its guidance as to when neglect is excusable for purposes of Rule 9006(b)(1). In *Pioneer*, the Supreme Court held that the determination of whether a parties' neglect will be considered excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id*. The Court indicated that the circumstances to be considered include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* The Court also held that neglect is not made excusable by the fact that the fault lay not with the party but with its counsel. The Court held that for purposes of Rule 9006(b)(1), parties are accountable for the acts and omissions of their chosen counsel. *Id*. at 1499. "[T]he proper focus is upon whether the neglect of respondents *and their counsel* was excusable." *Id*. (emphasis in original).

**DISCUSSION**

Acknowledging that the request was tardy, Coastal argues for an enlargement of the time for filing the request under Fed. R. Bankr. P. 9006(b)(1) for excusable neglect. While Coastal must concede that the actions of its in-house counsel in failing to timely file the request were neglectful, it argues that this neglect was excusable. The test prescribed in *Pioneer* is an equitable one, taking account of all relevant circumstances.

I start by noting that the Notice that was sent to Coastal on or about October 15, 2019, which in-house counsel received, announced the date of the meeting of creditors and stated, in bold, that the deadline for filing § 503(b)(9) requests was 60 days from the first date set for the meeting. The Notice went so far as to describe what § 503(b)(9) covers: "goods sold within twenty (20) days of bankruptcy." Coastal's protestation that this deadline was not sufficiently conspicuous within the Notice is simply false. Official Form 309F plainly identifies the deadline and specifies what expenses under § 503(b)(9)

4

are. One need not be a bankruptcy professional to understand the message that the claimant must quickly assess whether goods were shipped in the 20 days immediately preceding the bankruptcy filing. The deadline was clear and conspicuous, but counsel knew she did not understand its import and nonetheless delayed in bringing it to an outside attorney who did. Indeed, Coastal states that one of the circumstances that the Court should consider is "Coastal's lack of familiarity with section 503(b)(9) of the Bankruptcy Code and the Local Rules of this Court as a result of its lack of experience in bankruptcy matters generally." This is not exculpatory; knowing that it lacked the necessary expertise, Coastal knew it needed to bring in outside counsel but delayed for months in doing so. It did so at its own risk. In the language of the *Pioneer* factors, the reason for the delay was within Coastal's reasonable control. While I find no bad faith on the part of Coastal (and none is alleged), still Coastal knew it was in over its head, in a case in which it had large claims, but inexplicably tarried in referring the matter to outside counsel, which it knew it needed to do. Also, the applicable deadline came some 90 days into the case; though it was relatively early—relative to the deadline for filing proofs of claim—it was hardly draconian in brevity. To miss this deadline, Coastal had to delay for a considerable time; there is simply no explanation, much less justification, by Coastal for the length of this delay.

      Coastal argues that the Court should further consider "how the lack of prejudice to the Debtor in considering Coastal's late filed request stands in contrast to the potentially substantial prejudice to Coastal should its claim for 20-Day Goods be denied the priority to which it is entitled under section 503(b)(9)." The objecting parties do not contend that the Debtor, or the estate, or the creditor body in general would be prejudiced by extending the deadline to accommodate Coastal's late filing, and I accordingly find that there would be none. However, I further hold that where Coastal knowingly sat on its rights, the lack of prejudice is irrelevant.

      The deadline for filing a § 503(b)(9) request for payment is set relatively early in a case because claims with administrative priority can have an outsize effect on a case and on a debtor's ability to

5

propose a confirmable plan. The deadline serves a purpose and should, as a general rule, be enforced. To be sure, Rule 9006(b)(1) makes it subject to extension, after its lapse, for excusable neglect, but lack of prejudice alone does not make otherwise unexcusable conduct excusable. Rather, its role is to help a court determine whether an excusable lapse can be remedied. Where Coastal knowingly delayed at its own risk, its neglect is not excusable, with or without prejudice.

For these reasons, a separate order will enter denying the request for relief under Rule 9006(b)(1) and, accordingly, denying the request for payment of administrative expense as untimely. To be clear, this order is without prejudice to allowance of the same charges as part of Coastal's nonpriority unsecured claim.

Date:  May 1, 2020                                    _____/s/ Frank J. Bailey_____
                                                      Frank J. Bailey
                                                      United States Bankruptcy Judge